**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| HERCILIA H. GROW, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:19-CV-00630-KD-C |
| | ) | |
| vs. | ) | REMOVED FROM CIRCUIT COURT OF |
| | ) | MOBILE COUNTY, ALABAMA |
| TRANSAMERICA LIFE INSURANCE | ) | |
| COMPANY, | ) | CASE NO. 02-CV-2018-902419.00 |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(3), on the Plaintiff's Motion to Remand this matter to the Circuit Court of Mobile County, Alabama, (Doc. 3) and Supplement and Amendment to Remand for An Award of Attorney's Fees (Doc. 4); and the Response in Opposition to Motion to Remand filed by Defendant, Transamerica Life Insurance Company ("Transamerica") (Doc. 8). After careful consideration of the pleadings and the briefs of the parties, along with the comments of counsel presented during oral argument, it is determined, for the reasons discussed herein, that Plaintiff's Motion to Remand (Doc. 3) should be GRANTED and further that Plaintiff's Supplement and Amendment to Remand for An Award of Attorney's Fees (Doc. 4) should be GRANTED IN PART AND DENIED IN PART.

## I.    Background

This action basically concerns a contractual dispute over insurance coverage.  It is the second time that defendant Transamerica has removed this matter into this Court.  (See *Grow v. Transamerica*, Civil Action No. 1:18-cv-00455-KD-C). The Plaintiff filed her Complaint (Doc. 1-1, PageID. 21-30) in the Circuit Court of Mobile County, Alabama, on September 21, 2018, asserting claims for breach of contract (Count One), declaratory judgment (Count Two), money

had and received (Count Three) and unjust enrichment (Count Four).  All four claims arise out of an alleged breach of a policy of long-term care insurance issued to Plaintiff by Defendant Transamerica in 1999.  Transamerica timely removed the action on October 22, 2018 pursuant to diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446.

In her Complaint, Plaintiff alleges that she was 84 years old in 2016 and had made premium payments on a specific policy with Transamerica for nearly 20 years.  The Plaintiff claims that after she had fallen several times, she was admitted in August of 2016 to an assisted living facility, Atria Regency, in Mobile, Alabama, and subsequently, she made a claim for alternative care facility benefits under her policy with Transamerica.  This dispute arose because Transamerica denied that Plaintiff was entitled to benefits under the policy.

The Complaint seeks "compensatory damages including but not limited to all Alternative Care Facility Benefits afforded to the Plaintiff under the policy" (Count One), "compensatory damages, including but not limited to all premium payments paid by the Plaintiff under the Policy" (Counts Three and Four).  In Count Two, Plaintiff seeks a declaratory judgment under specific Alabama statues, asking the court to "declare that the Plaintiff is entitled to Alternative Care Facility Benefits under the Policy, and declare that Plaintiff is entitled to an award for her reasonable attorneys' fees … ." (Doc. 1-1, PageID. 26-29).

Upon review of the information submitted in support of this Court's jurisdiction after the first removal, Chief Judge DuBose ruled in February 2019 that the removing party had not met its burden of showing by a preponderance of evidence that the amount in this controversy exceeded the jurisdictional amount required for removal in a diversity action. (Doc. 3-4; PageID. 372).  She ordered the action remanded to the Circuit Court of Mobile County, Alabama.

Defendant Transamerica filed its second Notice of Removal in this Court on September 11, 2019, asserting that this Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1441, and 1446 and diversity jurisdiction over this case pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. (Doc. 1.)  The Defendant contends that diversity jurisdiction exists because after consideration of all the information relevant to establishing the amount in controversy, some of which did not come to light until just recently, it is now more likely than not that the amount in controversy is in excess of $75,000.  (*Id*. at 1-3.).  With respect to the new position that federal question jurisdiction also exists, Defendant explains that it only became aware that this case necessarily turns on a question of federal law on August 22, 2019, during the deposition of Chastity Walker, the corporate representative of Transamerica.

As was the case in the first attempt at removal, there is no dispute that the parties are diverse citizens of different states.  The disputed issue with respect to diversity jurisdiction remains the amount in controversy.

With regard to the amount in controversy, the Defendant argues that the Plaintiff's contract with Transamerica includes a "Home and Community Care Benefit" that pays benefits of $40 per day for an "Alternative Care Facility" (assisted living facility), provided that certain criteria are met.  Transamerica agreed to "pay the actual charges incurred, not to exceed the Maximum Daily Benefit, while [Mrs. Grow was] confined in an Alternative Care Facility. … To qualify for Alternative Care Facility Benefits, [she has to show that it was necessary that she] be confined in an Alternative Care Facility and [is] receiving care because [she is] a Chronically Ill Individual." (Doc. 1-1, PageID. 52).  The pertinent definition of a "Chronically Ill Individual" is "A person who has been certified by a Licensed Health Care Practitioner as: … requiring substantial supervision to protect such person from threats to health and safety due to severe Cognitive

Impairment.  The term "severe Cognitive Impairment" is not defined, however, and it is argued by the Plaintiff that this term in the policy is ambiguous.

Under these circumstances, Defendant calculates that if the Plaintiff were successful on her claim, the Plaintiff has accrued unpaid Alternative Care Facility daily benefits of approximately $43,840.00.  (Doc. 1 at 2, PageID. 2).  Defendant also calculates that the Plaintiff would be eligible for the "Waiver of Premium" benefit, which at $248.48 per month, would equal approximately $8,945.48 in past premiums to be refunded.  (*Id.*).  The Plaintiff does not dispute that the Alternative Care Facility and Waiver of Premium benefits which have arguably accrued as of the date of the Notice of Removal should be considered in determining the amount in controversy. However, these past benefits and premiums to be refunded, in total, do not serve to meet the $75,000 threshold of 28 U.S.C. § 1332(a).

Even so, Transamerica argues that additional facts discovered after the action was remanded, including knowledge that the case now involves a substantial federal question, creates a situation where removal would be timely if filed within thirty (30) days after receipt of papers from which it was first able to  ascertain that the case is or has become removable.  28 U.S.C. § 1446(b)(3).  The developments that prompted the second removal are described as:

• Rejection of multiple settlement offers and service of intentionally vague discovery responses, indicating Plaintiff's intention to seek more than $75,000;

• Statements on the record that Plaintiff is still evaluating (on the eve of the 1-year removal deadline) whether it will add additional claims in the lawsuit;

• Admission that the combined accrued benefits and waiver of premiums sought by Plaintiff now exceed $52,000 dollars and continue to accrue; and

• Statement on the record revealing that Plaintiff's claim turns on interpretation of a federal tax provision.

(Doc. 1 at 2-3, PaigeID. 2-3).

The "other papers" upon which Defendant relies to start the thirty-day clock for purposes of filing this second removal petition are described as an email from Plaintiff's counsel rejecting Defendant's offer to settle the dispute for $75,000 received on August 12, 2019, the deposition transcript containing Plaintiff's refusal to respond to the renewed settlement offer, the testimony of Chastity Walker taken by Plaintiff's counsel on August 22, 2019, and the transcript of a state court hearing dated August 23, 2019. (Doc. 1-7, PageID. 262-298).

The settlement offer that was rejected by the Plaintiff is contained in an email dated August 5, 2019 (Doc. 1-2, PageID. 248):

> I have received authority from Transamerica to make a counteroffer of $75,000 to settle this case.  This offer is conditioned on cancellation of Mrs. Grow's policy, and dismissal with prejudice of this lawsuit.  It also is conditioned upon Mrs. Grow signing a settlement agreement (to be drafted by me) including confidentiality, non-admission of liability, and disclaimer of tax advice.

(*Id*.)  Plaintiff's counsel responded to this offer by email dated August 12, 2019:

> Plaintiff is willing [to] settle her claim for past due benefits and past waiver of premiums for $35,000.  Further, as part of this settlement, Transamerica shall immediately begin paying, in accordance with Mrs. Grow's policy, her daily benefit of $40 – and all future premiums shall be waived.  No policy release shall be given – and Mrs. Grow reserves the right to apply for other benefits under her policy.

(Doc. 1-3, PageID. 250).  It is assumed that Transamerica rejected Plaintiff's counter demand, but any specific response is not in the record.  This assumption is based on the email sent by Defendant's counsel the very next day, August 13, 2019, requesting that the Plaintiff stipulate that the amount in controversy did not exceed $75,000. (Doc. 1-4, PageID. 252).  Defendant's request for a stipulation went unanswered, either in writing or during the deposition of Ms. Walker.  Defendant's August 19, 2019 email renewed the same settlement counteroffer and again requested a stipulation as to the total damages being

sought by Mrs. Grow.  The offer was left open until the convening of Ms. Walker's deposition scheduled for August 22, 2019. (Doc. 1-5, PageID. 257).

During the deposition of Ms. Walker, Plaintiff's attorneys did not respond to Defendant's renewed counteroffer.  As to the testimony of Ms. Walker on August 22, 2019, it appears that the only relevant testimony on the question of when the Defendant became aware that this action was removable on the basis of federal question jurisdiction is:

> Q.  (BY MR. VAUGHN) They need to be very certain in their work when they're basing a denial on an undefined policy term, correct?
>
> MR. LATTA:  Object to the form.
>
> THE WITNESS:  Well, on these policies they are federally tax-qualified policies, and so the language is not something that Transamerica came up with. These are regulations that come directly from the Federal Government.  So the wording is consistent across all long-term care policies, uh …

(Doc. 1-6, PageID. 261).

The next day following the deposition of Ms. Walker, a hearing was held before Judge Phillips in the Circuit Court of Mobile County where the possibility of an amended complaint was discussed.  Judge Phillips asked if an amendment was being considered. Plaintiff's attorneys responded that they could not say that they would not seek an amendment but did say that the testimony of Walker taken the previous day prompted more investigation since she admitted that Transamerica had information that Plaintiff was entitled to benefits at the time the decision to deny her those benefits was made.  This was the first time that counsel for the Plaintiff had been provided this information.  (*Id*. at PageID. 288-291).

## II.    Burdens of Proof

### A.  Diversity Jurisdiction

To establish federal diversity jurisdiction, § 1332 of Title 28 of the *United States Code* requires that the action be between citizens of different states and that the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  When a defendant removes a case on the basis of diversity jurisdiction, such defendant bears the burden to prove, by a preponderance of the evidence, that there is a sufficient amount in controversy. *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 913 (11th Cir. 2014); *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1241 (11th Cir. 2013). Thus, the burden is on Transamerica to prove that this jurisdictional requirement has been met: "the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *Id.* (*quoting Williams v. Best Buy Co.*, 269 F3d. 1316, 1319 (11th Cir. 2001)).

Transamerica may meet that burden, "by showing either that it is 'facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum,' or that there is 'additional evidence demonstrating that removal is proper.'" *Crocker v. Lifesouth Community Blood Centers, Inc.*, CV 15-0619-WS-B, 2016 WL 740296, at *2 (S.D. Ala. Feb. 23, 2016), quoting, *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citations omitted).  Transamerica, however, may not resort to conjecture or speculation to show that the jurisdictional threshold is satisfied.  *Id.*, at *2 (*citing, Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)). "In evaluating the sufficiency of a removing defendant's jurisdictional showing, courts need not 'suspend reality or shelve common sense,' but instead 'may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.'" *Id.* (*quoting, Roe*, 613 F.3d at 1062 (citations omitted)).

As the Plaintiff contests Transamerica's allegation that the amount in controversy exceeds the jurisdictional threshold and as the Plaintiff made an unspecified demand for damages in state court, the burden is on Transamerica to demonstrate by a preponderance of the evidence, *i.e.*, more likely than not, that the amount in controversy exceeds the $75,000 jurisdictional requirement. *Roe*, 613 F.3d at 1061. Since the removal is based on the receipt of "other paper," as alleged in this removal petition, Defendant must show that the "other paper" contains a statement that "unambiguously establish[es]" that it is more likely than not that the amount at stake may exceed the jurisdictional minimum. *See Advantage Med. Elecs., LLC v. Mid-Continent Cas. Co.*, No. CIV.A. 14-0045-CG-N, 2014 WL 1764483, at *5 (S.D. Ala. May 5, 2014).

In those cases, such as this case, where a claim is made for injunctive and declaratory relief, "the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective." *S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315–16 (11th Cir. 2014) (*quoting Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000)). In other words, "the value of declaratory relief is the monetary value of the benefit that would flow to the plaintiff if the [relief she is seeking] were granted." *Id.* at 1316 (quotations omitted). "[T]he value of declaratory or injunctive relief must be sufficiently measurable and certain to satisfy the amount-in-controversy requirement." *Id.* (quotation marks omitted). The amount-in-controversy requirement is not satisfied if the value of the injunctive relief to plaintiff is "too speculative and immeasurable." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (quotation marks omitted); *see Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002) (holding that the value of the injunctive relief in question was too speculative to include in the amount in controversy).

In the event that doubts exist as to the amount in controversy, the Court is "obligated to strictly construe the statutory grant of diversity jurisdiction" and resolve all doubts in favor of remand. *Morrison*, 228 F.3d at 1268; *see Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

### B.  "Arising Under" Jurisdiction

Transamerica has made the argument, for the first time in this second removal petition, that the state-law claims raised in Mrs. Grow's complaint turn on a substantial question of federal law and thus qualify as claims arising under federal jurisdiction. When faced with this ground for removal, the question becomes: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 125 S.Ct. 2363, 2368, 545 U.S. 308, 314 (2005).  Stated differently, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S.Ct. 1059, 1065, 568 U.S. 251, 258 (2013).   "Where all four of these requirements are met, [] jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." (*Id.*) (quotation marks omitted).

Put somewhat differently, "[f]or federal courts to have jurisdiction, the state law claim must ***turn on*** an 'actually disputed and substantial' issue of federal law." *Bender v. Jordan,* 623 F.3d 1128, 1130 (D.C. Cir. 2010) (*quoting Grable,* 545 U.S. at 314, 125 S.Ct. 2363) (emphasis added). Federal jurisdiction must, further, "be 'consistent with congressional judgment about the

sound division of labor between state and federal courts governing the application of § 1331.' "

*Id.* (quoting *Grable,* 545 U.S. at 313–14, 125 S.Ct. 2363)).

## III. Analysis

### A. Diversity Jurisdiction

After the first removal of this action, Chief Judge DuBose specifically found that diversity jurisdiction was lacking due to the speculative nature of the information provided by Transamerica. (Doc. 3-4, PageID.372-373).   It is the undersigned's opinion that the additional information provided in this second removal petition should not change that decision.

Although potential damages under the terms of the contract at issue have increased since the first removal, they remain under the jurisdictional amount threshold.   All parties agree that the Plaintiff has arguably accrued unpaid Alternative Care Facility benefits of approximately $43,840.00.   (Doc. 1, at 2).   The parties also agree that if the Plaintiff were found to be entitled to the "Waiver of Premium" benefit, at $248.48 per month that benefit would equal approximately $8,945.48 in past premiums to be refunded.   (*Id.*).   Since these potential damages to date do not establish a case value that exceeds the statutory threshold of $75,000 and since the court has rejected the information that would expand the value assessment to a figure greater than the threshold amount, the value of Plaintiff's claims remain under $75,000.

First, as decided previously, "district courts throughout the circuit have held that where the insured's right to coverage for a particular occurrence, and not the validity of the policy, is at issue, the value of the claim rather than the face value of the policy determines the amount in controversy." *James v. Washington National Insurance Company*, 2018 WL 4091001, at *4 (M.D.Fla. 2018) (citations omitted).   Additionally, even though Plaintiff seeks a declaration as to her future right to benefits, "the measure of recovery and, hence, the amount in controversy, is

only the aggregate value of past benefits allegedly wrongly withheld." *Id.* (*quoting Beaman v. Pac. Mut. Life Ins. Co.*, 369 F.2d 653, 655 (4th Cir. 1966)).

Secondly, even if the Court were to consider the evidence of future benefits, that evidence is insufficient, as previously found, because the information provided by the Defendant is inherently unreliable. [1] Also, "even if Plaintiff's future benefits did exceed $75,000.00, the weight of authority suggests that the Court would not be permitted to consider those sums in determining the amount in controversy … . For breach short of repudiation or an intentional abandonment equivalent thereto, the damages under such a policy as this do not exceed the benefits in default at the commencement of the suit." *Id.* at *5 (*quoting N.Y. Life Ins. Co. v. Viglas*, 297 U.S. 672, 678 (1936) (quotation marks and citations omitted).

---

[1] In the first removal, Transamerica submitted an affidavit of an actuary for the purpose of offering an opinion that Mrs. Grow had a 66.2% chance of living to age 90 and that would lead to a total valuation of her claims exceeding $75,000. This opinion was based on a review of life expectancy tables and of unidentified documents purportedly containing some of her medical and/or treatment records. Admittedly, the following two cases involve *Daubert* motions and the exclusion of expert testimony presented for trial and not in instances where a court is considering information presented by a removing party in an effort to establish the court's jurisdiction, however, they are considered illuminating on the issue of assessing the reliability and persuasiveness of an actuary's opinion as to Mrs. Grow's life expectancy. *See* e.g., *Noon v. Carnival Corporation*, 2019 WL 5784689, at *5 (S.D.Fla. 2019) ("Here, Defendant's motion is well taken because Dr. Myerburg's opinion is based on insufficient facts and data. There is no dispute that Dr. Myerburg relied on life expectancy tables, Mr. Noon's deposition, and the deposition summaries of Mrs. Noon's daughters. The problem is that Plaintiff claims that Dr. Myerburg also relied on Mrs. Noon's medical records when Dr. Myerburg specifically testified that he did not review any part of Mrs. Noon's medical file. [] ('Well, I do have an idea based on the deposition of her husband and the summaries of the deposition of the two daughters. What I don't have is medical record confirmation of that.'). Instead, Dr. Myerburg reviewed an unspecified set of records from Jackson Memorial Hospital that 'contained references to [Mrs. Noon's] prior medical status,' and only 'to a limited extent.' []. This means that, based on Dr. Myerburg's own testimony, his opinion – that Mrs. Noon was expected to live another 25 years – relies solely on life expectancy tables, depositions, and a vague set of records that reference Mrs. Noon's medical status."); and *Rinker v. Carnival Corp.*, 2012 WL 37381, at *1 (S.D.Fla., 2012) ("Dr. Lessne's report and his deposition testimony indicate that his report is based on the life expectancy of a healthy 62 year old woman. However, the medical evidence, as well as Dr. Lessne's report, indicates that Plaintiff is not a healthy 62 year old woman; she is a 62 year old woman with stage three colon cancer, that was diagnosed in March 2011.").
.

Turning to the newly discovered information, the Defendant argues that this Court now has additional information that supports a finding of diversity jurisdiction.  The information is listed as 1) Plaintiff's multiple rejections of the same settlement offer, 2) her refusal to stipulate that she is not seeking more than $75,000 in damages, and 3) a reservation of her right to seek an amendment of the complaint in state court should it become necessary.

      1.   Rejection of Settlement Offers.

Transamerica made what it designated a "counteroffer" to settle the case for $75,000 on August 5, 2019. (Doc. 3-5; PageID. 375).  This "counteroffer" contained three conditions: 1) the cancellation of Mrs. Grow's policy; 2) the dismissal with prejudice of the current lawsuit; and 3) the execution of a settlement agreement that included confidentiality, non-admission of liability and a disclaimer of tax advice.  Plaintiff responded to this "counteroffer" eight days later, on August 12, 2019:

> Plaintiff is willing [to] settle her claim for past due benefits and past waiver of premiums for $35,000.  Further, as part of this settlement, Transamerica shall immediately begin paying, in accordance with Mrs. Grow's policy, her daily benefit of $40 – and all future premiums shall be waived.  No policy release shall be given – and Mrs. Grow reserves the right to apply for other benefits under her policy.

(Doc. 1-3, PageID. 250).  Plaintiff's rejection of the offer by Transamerica and her counter demand may be factored into the consideration of whether there is sufficient information to establish the jurisdictional threshold as argued by Transamerica, but this information does not move the value of this action across the threshold.

In this Circuit, settlement offers have been considered by courts presented with a dispute over the jurisdictional amount when considering whether diversity jurisdiction has been established.  "While [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1097 (11th Cir.1994).

What it counts for, however, depends on the circumstances. Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence. On the other hand, settlement offers that provide "specific information ... to support [the plaintiff's] claim for damages" suggest the plaintiff is "offering a reasonable assessment of the value of [his] claim" and are entitled to more weight. *Golden Apple Management Co. v. Geac Computers, Inc.,* 990 F.Supp. 1364, 1368 (M.D.Ala.1998). "Often, where settlement offers provide little in the way of support or analysis, courts have afforded such settlement offers little weight—writing them off as "puffing and posturing." *Wood v. ADT LLC*, 2016 U.S. Dist. LEXIS 187063, at *14– 15 (M.D. Ala. 2016) (stating that a settlement offer carries "little weight," however, when there is an "absence of specific information on the basis of the demand."); *Jackson v. Select Portfolio Servicing, Inc.*, 651 F.Supp. 2d 1279, 1281 (S.D. Ala. 2009) (A settlement offer has "little weight" in the amount-in-controversy calculus when it merely "reflect[s] puffing and posturing").

In this particular case, the settlement demand made by Plaintiff on August 12, 2019 seems to have been a straightforward and reasonable assessment of the damages ascertainable at the time. It does not contain any puffing but appears to be a reasonable assessment of the value of the claims on that date. Thirty-five thousand was demanded to cover the past due benefits and waiver of premiums accrued on that date. The demand went further, however, to include a demand that Defendant agree that Mrs. Grow qualified for a daily benefit of $40 per day and that all future premiums should be waived. The value of such a demand if extended beyond the past due benefits as of the date of the demand would require a determination of how long Mrs. Grow would need the additional benefits,

13

which would involve speculation based on the information of record. Thus, Plaintiff's settlement demand falls into the category of specific demands based on hard evidence of contractual obligations. As such, it is actually evidence that the amount in controversy is below $75,000.

Even assuming entitlement to prospective payments on the policy at issue, reliable information as to the duration and possible total payments to the insured was not available to Plaintiff or Defendant at the time this demand was received. The demand also made clear that Plaintiff would want to hold on to other valuable benefits contained in a policy she had kept for over twenty years even though the need for those benefits did not currently exist nor was any evidence presented to suggest that she will need them. Since this Court has already declined to estimate, on this record, Mrs. Grow's life expectancy or whether she would necessarily qualify for Home and Community Care Benefits during the remainder of her life, this demand does not show that the value of her claims exceeds the jurisdictional threshold.

Going a step further, Defendant argues that Plaintiff's multiple refusals to accept its counteroffer made on August 5, 2019 is proof that she believes that the value of her claims exceed $75,000. After reading the pleadings, including the insurance contract, the undersigned disagrees. There are clearly other reasons to reject the counteroffer made to settle existing claims. The most glaring is the fact that Defendant was demanding a cancellation of the entire policy for this one-time payment, which would include other potentially valuable benefits such as nursing home care. Given the Plaintiff's age, known medical problems and the terms of the contract, it would seem most unwise to settle all present and future claims under the terms presented by Transamerica. Like Judge Baker decided in *Rola v. Wal-Mart Stores, Inc*., 2011

WL 3156672, at *9 (M.D.Fla. 2011), the undersigned is "not persuaded that a failure to accept an offer [of $75,000] conclusively establishes that the offer was too low." This is especially true when a counter demand is made that clearly includes damages accurately calculated to the date of the demand that falls below the threshold.  In addition, the failure of Plaintiff to speculate as to the value of future benefits that will be available under the current insurance policy or to provide interrogatory answers that would include such speculation does not implicate the true value of the controversy in this action.  *See also Harmon v. Wal–Mart Stores, Inc.,* 2009 WL 707403 (M.D.Ala. 2009) (a refusal to stipulate to an amount in controversy in response to an interrogatory does not result in an admission regarding the amount in controversy: "Defendant cannot create an end-run around the jurisdictional requirements by forcing a denial of a negative and then claim the positive is admitted and conclusively determined.").

2.   State Court Record.

Defendant has provided a transcript of a hearing held in the Circuit Court of Mobile County where counsel for the Plaintiff would not state unequivocally that Plaintiff would not attempt to amend her complaint in that Court after the passage of the one-year limitation for removal petitions.  Instead, they told Judge Phillips that they were considering new information received the day before and could not to any degree of certainty rule out a possible request for an amendment.  Defendant's concern is that this is an attempt by counsel to delay Plaintiff's amendment that could clearly reveal the true value of the lawsuit until after the Defendant would be barred from removing to federal court.  This information is presented not only as an "other paper" starting a new 30-day clock for removal purposes but also as a factor to be considered when trying to calculate the value of Plaintiff's action at the time of removal. *See Middlebrooks*

*v. Johnson & Johnson Co.*, 2008 WL 4003926, at *1 (M.D.Ga. 2008) ("At the April 1 hearing, Plaintiff unambiguously admitted that she was seeking damages in excess of $75,000.").

This information does little, however, to increase the estimated value of this controversy.  No amendment has been filed nor were Plaintiff's attorneys able to confirm that an amendment would be filed in this action based on the information that they had reviewed through the date of oral argument on this motion to remand.  Even if an amendment were filed and approved by the state trial judge after remand, the one-year statute of limitation contained in 28 U.S.C. § 1446(c)(1) does not necessarily foreclose a third removal if the removing party is able to show that "the plaintiff [] acted in bad faith" by waiting to file an amended complaint in order to prevent the defendant from removing timely. *Id.* (*See Hill v. Allianz Life Ins. Co. of North America*, 51 F.Supp.3d 1277, 1281 (M.D.Fla. 2014) ("This case however, is not subject to the one year limitation on removal of diversity cases because Plaintiff acted in bad faith by concealing information relevant to the actual amount in controversy in order to prevent removal."); *but cf. Miami Beach Cosmetic and Plastic Surgery Center, Inc. v. UnitedHealthcare Insurance Company*, 2016 WL 8607846, at *5 (S.D.Fla. 2016) ("the mere timing of Plaintiff's decision to expand its claims, without more, is insufficient to show bad faith under 28 U.S.C. § 1446(c)(1).").

Transamerica has provided little other than these statements by counsel during a motion hearing to support the existence of an unpled bad faith tort claim in addition to the current claims.  There was no specific information provided by Transamerica that would persuade the undersigned that the filing of an amended complaint is likely.  For these reasons, this additional information does not increase the value of the controversy to a degree that would show that the value of the case is greater than $75,000.

On the issue of diversity jurisdiction based on an "other paper" removal, since the documents listed by Transamerica do not contain unambiguous information that clearly establishes that the value of Plaintiff's claims are in excess of $75,000 at the time of removal, it is the opinion of the undersigned that Transamerica has failed to establish diversity jurisdiction.

### B.  Arising Under Jurisdiction

Transamerica filed this second removal pursuant to 28 U.S.C. § 1446(b)(3):

> "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

28 U.S.C. § 1446(b)(3) imposes a thirty-day limitation on the removal of civil cases.  Therefore any renewed removal window opens, but only for thirty days when the defendant receives a document "from which it may first be ascertained that the case is one which is or has become removable. 28 U.S.C. § 1446(b)… ." *Shipley v. Helping Hands Therapy*, 2019 WL 4014764, *6 (S.D.Ala. 2019) (parenthetical omitted).  The term ascertained has been interpreted to mean "to make certain, exact, or precise" or "to find out or learn with certainty." *Id*. (*quoting Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002)).  "[R]emoval under § 1446(b) requires three elements, there must be (1) an amended pleading, motion, order or other paper, which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order) and from which (3) the defendant can first ascertain that federal jurisdiction exists. *Id*. (*quoting Lowery v. Alabama Power Company*, 483 F.3d at 1213 n.63 (11th Cir. 2007) (quotation marks omitted)).

The "other paper," with regard to federal question jurisdiction, is alleged to be the transcript of the deposition testimony of Transamerica's corporate representative, Ms. Walker. The argument is that it was then that Defendant was first able to ascertain that a substantial federal question was raised in this action so as to provide a basis for removal.

Transamerica concedes that in addition to showing that the second removal petition was timely, in order for Mrs. Grow's state law claims to arise under federal law, they must have been "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in the federal court without disrupting the federal-state balance approved by Congress." (Doc. 1, PageID. 9). Even assuming that this deposition constitutes "other paper" that was received from the Plaintiff and the removal was timely, the testimony contained therein does not supply all the information from which a party would be able to ascertain that a critical federal question was raised.

Defendant has identified the substantial federal issue as one turning on a disputed question of federal tax law, whether the term "severe cognitive impairment" as required in tax qualified long term care policies by 26 U.S.C. § 7702B(c)(2)(A), "is void for vagueness or unlawfully ambiguous" as used in the policy. (Doc. 1, PageID. 9). Further, Defendant argues that since the "statute's terms are fixed by law and apply to all tax-qualified long-term care policies, the issue is substantial not only to the present parties, but for future disputes arising under the phrase across the federal system." (*Id*.) Plaintiff responds that a substantial federal issue has not been raised in the pleadings in this case. Instead, this is a typical contract dispute over ambiguous language applicable to eligibility of benefits. Any tax issue that is involved because of the tax-qualified nature of the policy is not raised and even if it is, it is ancillary to the claims raised by the Plaintiff, and certainly not substantial.

Transamerica developed the policy purchased by Mrs. Grow to ensure that policy holders would be given the option to take advantage of tax avoidance opportunities if benefits were ever paid to them under the policy.  (Doc. 1, PageID. 9).  In order for these tax benefits to be made available to its policy holders, it is argued by the Defendant that it was necessary that the content of the policy comply with federal guidelines so as to entitle the purchasers to obtain these favorable tax treatments.  Transamerica has cited to the "Long Term Care Act" (Doc. 1, at 7, PagedID.7) as that section of the Internal Revenue Code ("IRC") specifically applicable to the tax treatment of qualified long-term care insurance plans. See 26 U.S.C. § 7702B. ("Treatment of qualified long-term insurance."). [2]  However, the policy purchased by Mrs. Grow does not include any reference to a "Long Term Care Act" or the specific IRC section cited by Transamerica.  Instead, it specifically notified her that "[t]his Policy is intended to be a qualified long-term care insurance contract under the Health Insurance Portability and Accountability Act of 1996 [HIPAA]." (Doc. 1-1, PageID. 34).[3]  From the inception of the state court action, Plaintiff provided a copy of the insurance contract between Transamerica and Mrs. Grow dated July 27, 1999, including the statement of an intended purpose to create a long-term care insurance contract pursuant to HIPAA.

---

[2] "Congress enacted these provisions because of the critical role of long term care insurance in protecting families. 'The legislation ... provides tax deductibility for long term care insurance, making it possible for more Americans to avoid financial difficulty as the result of chronic illness.' 142 Cong. Rec. S3578–01 at *3608 (Statement of Sen. McCain) (Apr. 18, 1996); *see also* Joint Committee on Taxation, 'Description of Federal Tax Rules and Legislative Background Relating to Long–Term Care Scheduled for a Public Hearing Before the Senate Committee on Finance on March 27, 2001,' at 2001 WL 36044116 (provisions granting tax advantages for long-term care plans were adopted 'to provide an incentive for individuals to take financial responsibility for their long-term care needs.')." *Dragovich v. U.S. Dept. of Treasury*, 872 F.Supp.2d 944, 947–48 (N.D.Cal., 2012).

[3] Transamerica never mentions HIPAA in its removal petition or its response to the motion to remand. There is no discussion about the relationship between HIPAA, 26 U.S.C. § 7702B and the policy purchased by Mrs. Grow.

In Plaintiff's state-court complaint, Transamerica was also notified that a major component of the lawsuit would be an issue as to how an undefined term in the policy should be treated under Alabama law.  That undefined term, "severe cognitive impairment," is important because of its inclusion in the definition of a chronically ill individual.  Both the IRC statute cited by Transamerica and the insurance policy used similar language to define a "chronically ill individual"[4] for purposes of determining eligibility for alternative care facility benefits.  In order to receive these benefits, the insured must show that she is "chronically ill."  Specifically, if she was able to show that she had been certified by a "licensed health care practitioner" as someone in need of substantial supervision to protect her from threats to health and safety due to a "severe cognitive impairment," she would be entitled to alternative care benefits.  The definition of "cognitive impairment" appears only in the policy – it is not included in the IRC statute identified.  Accordingly, the record is silent as to any government regulation or statute that would have mandated that the term "cognitive impairment" be defined in long-term care contracts.  Thus, this important term came from the drafting party, Transamerica, without any known direction or mandate from the government.  Under these circumstances, Plaintiff takes the position that since "the Policy contains no definition for the term, "severe Cognitive Impairment", but instead contains a definition for the term "Cognitive Impairment" (that does not appear to be mandated by federal statute or regulation) the policy is inherently ambiguous, misleading and confusing." (Doc. 3, PageID. 335).  According to Plaintiff, under Alabama law,

---

[4] As pointed out by Plaintiff, the definitions of a "chronically ill individual" are not identical, the policy version being more restricted in scope.  For purposes of this action, however, it is clear that the policy language adopts a portion of the definition contained in 26 U.S.C. § 7702B(c)(2)(A)(i & iii). The policy, however, chose to omit a third category of qualifying individuals and also omitted a requirement that a certification of eligibility from a licensed health care practitioner be obtained every 12 months.

the more favorable term of "cognitive impairment" should therefore be used when deciding if

Mrs. Grow is eligible for benefits.

The Court has also reviewed the transcript of the testimony of Cindy Walker, alleged to

be the "other paper" produced by the Plaintiff that, for the first time, arguably provided

Transamerica with unambiguous information that made it possible to ascertain the existence of

federal question jurisdiction.  The testimony provided by Ms. Walker, however, does not provide

all the facts necessary to establish the federal question as posed in Defendant's removal petition:

> Q.  (BY MR. VAUGHN) They need to be very certain in their work when they're
> basing a denial on an undefined policy term, correct?
>
> MR. LATTA:  Object to the form.
>
> THE WITNESS:  Well, on these policies they are federally tax-qualified
> policies, and so the language is not something that Transamerica came up with.
> These are regulations that come directly from the Federal Government.  So the
> wording is consistent across all long-term care policies, uh …

(Doc. 1-6, PageID. 261).  From this testimony one learns only that the policy is a federally

tax-qualified policy; the language in the policy was not something Transamerica came up

with (which appears to be inaccurate in part from a review of the policy language and the

cited statute); unidentified regulations came directly from the federal government; and the

language in the policy is consistent across all long-term policies.[5]  She gave no information

about the specific regulations that mandated the use of the critical language contained in

the policy and did not refer to any specific federal statutes, if that is what she was talking

about when she employed the term "regulations."  Defendant's argument in the removal

---

[5] A review of the policy and the cited statute does not indicate, nor did Ms. Walker testify, that the policy
wording is dictated word for word by the federal statute referenced by the Defendant.  The statute, 26
U.S.C. § 7702B, identified by Transamerica and not Ms. Walker, does demand that certain provisions be
included in these private plans in order for the insureds to be able to take advantage of the applicable tax
benefits when and if insurance benefits are paid under a qualified plan.

petition does contain such information, however.   So, the question becomes, how did Transamerica take Ms. Walker's testimony that was produced by the Plaintiff and use it to identify the fact that a specific provision of the Federal Tax Code, not a regulation as she testified, would present a controlling federal question arising under the United States Constitution?  It appears that the Defendant has now been able to reach these conclusions by conducting independent research or an investigation of prelitigation drafting information available to it as the insurer, not from anything presented by Plaintiff in the Complaint or the testimony elicited from Ms. Walker.  This use of additional information not provided by Plaintiff in order to identify a substantial federal question that both parties argue is subject to the 30 day rule contained in 28 U.S.C. § 1446(b)(3) raises an interesting academic question not addressed by the parties.   If the information provided by the Plaintiff, the testimony of Ms. Walker, did not provide Defendant with affirmative and unambiguous  information of the existence of the predicates necessary for removal of an arising under case, could the Defendant, based on the information received and its own investigation, remove regardless of 28 U.S.C. § 1446(b)(3)?  The Second Circuit has answered this question in the affirmative in *Cutrone v. Mortgage Electronic Registration Systems, Inc.*, 749 F.3d 137, 148 (2nd Cir. 2014):

> We hold that, in CAFA cases, the 30–day removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered until the plaintiff serves the defendant with an initial pleading or other document that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 could be ascertained. We also hold that where these documents fail to trigger the removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3), a defendant may remove a case when, upon its own independent investigation, it determines that the case is removable. Thus, we hold that the 30–day removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not the exclusive authorizations of removal in CAFA cases.

(*Id.*).

So, based on the facts and arguments presented in this case, it does not appear that the 30-day clock pursuant to 28 U.S.C. § 1446(b)(3) was ever triggered by the filings and/or document produced by the Plaintiff.  Even so, the removal by the defendant prior to the one-year limitation based on its own investigation coupled with a review of the information presented by the Plaintiff is deemed to be timely in this action.

Turning to consideration of removability under the arising under statute, 28 U.S.C. § 1331, it is determined that Defendant's position that Plaintiff's claims raise a substantial federal question should be rejected.  After consideration and deliberation, with the benefit of oral argument, it is concluded that none of the state law claims raised by the Plaintiff fall into the small and unique category of cases that would authorize a federal court to exercise federal question jurisdiction over those claims presented.  The first indicator of problems with Defendant's position is the very brief and cursory manner in which the four *Grable* factors were discussed.  Going beyond this indicator, even if the resolution of the contract dispute is in favor of Mrs. Grow, Defendant has failed to show how that decision would disturb, disrupt or impair any federal precedent or any federal policy of authorizing beneficiaries of long term care policies to obtain favorable tax treatment when receiving benefits from those policies.  The state court is clearly competent to resolve the issue of eligibility under the contract and resolve any tangential federal issues that may arise given the shared language in the policy with federal statutes relevant to the authorizing of long term care policies and the tax benefits that may be applicable to them.

Defendant has also failed to show that this case involves substantial federal-law issues.  It has not articulated very clearly why a particular federal issue controls or why the

resolution of these state-law claims would "turn on" a federal question.  The issue at the heart of deciding eligibility under the relevant provisions of the policy, *i.e.*, is the term "sever cognitive impairment" ambiguous and if it is, does Mrs. Grow get the benefit of qualifying for benefits under the defined term cognitive impairment, does not have a bearing on the federal tax issue identified by the Defendant.  Rather, even assuming that she would receive the benefit of the more favorable term, a factual determination would need to be made as to whether her condition qualifies for benefits under that section of the policy.  That determination would clearly be fact intensive, requiring evidence of her intellectual capacity as certified by a licensed health care practitioner and measured by clinical evidence and standardized tests.  Only then could her eligibility be determined under the policy.

Finally, the undersigned is not convinced that this Court's exercise jurisdiction in this case would comport with the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. There has been no citation to any federal policy that these types of state claims should be removed to federal court nor has any precedent on point been cited that would convince the undersigned that this action, at its core, involves a federal claim or issue.  This case involves a contract dispute between two private parties, an individual and her insurance company.  It does not involve a government agency trying to enforce a tax code provision nor has it been shown that a positive ruling on behalf of the Plaintiff would somehow prove detrimental to the government's ability to enforce the cited provision of the tax code.  The specific federal issue identified by Defendant would only be an issue if and when Mrs. Grow is successful and then seeks favorable tax treatment as to any benefits to which she is found to be entitled under the

insurance policy.  If those circumstances eventually occur, any federal forum presented with the question of whether any benefits awarded to her under this policy should be given favorable tax treatment, would not be bound by the state court's decision granting benefits. For these reasons, it is determined that Defendant has failed to establish the existence of subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

IV.    **Motion for Attorney's Fees and Costs**

An order remanding a case certainly may require payment of just costs and any actual expenses, including attorney fees that are incurred as a result of the removal petition.  28 U.S.C. § 1447(c).  However, absent unusual circumstances, courts may award attorney's fees under this statute "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  The grant or denial of fees is committed to the discretion of the district court. *Gulf Coast Mineral, LLC v. Valentine Ventures, LLC*, 2014 WL 5363769, at *1 (S.D.Ala., 2014).

Plaintiff gives as reasons for the assessment of fees and costs that: 1) Transamerica unsuccessfully removed the case less than a year prior to the second removal on the same question of diversity jurisdiction; 2) that Defendant has known of the alleged federal question for over two years; and 3) the most cursory review would have revealed that there is no substantial federal question, therefore there is no objectively reasonable basis for removal of this matter.

Upon consideration of this matter, the request to supplement and amend the motion to remand is GRANTED, but it is RECOMMENDED that the request for an award of attorney's fees be DENIED.  The second removal was based in part on additional information developed after removal on the diversity-jurisdiction question although that information did not, in the opinion of the undersigned, change the calculus of the first decision.  However, based on that

information, it appears objectively reasonable to file a second removal petition.  Likewise, even though the proof of a substantial federal question has not been found, it is difficult to say that the presentation of this new basis for the Court to exercise jurisdiction was not objectively reasonable or was filed in bad faith.

## V.      Conclusion

Based on the foregoing, it is the opinion of the undersigned that the Defendant has not met its burden of establishing that it is more likely than not that the amount in controversy at the time of removal exceeded $75,000, as necessary to support federal diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Additionally, it has not been shown that the state law claims raised in this action arise under the Constitution, laws or treaties of the United States pursuant to 28 U.S.C. § 1331. It is therefore recommended that Plaintiff's Motion to Remand (Doc. 3) be **GRANTED** and this action is remanded to the Circuit Court for Mobile County, Alabama for further proceedings.

It is further recommended that Plaintiff's request to supplement and amend the motion to remand and for an award of attorney's fees (Doc. 4) be **GRANTED IN PART AND DENIED IN PART**.  Leave to supplement and amend her motion to remand should be **GRANTED** but her motion for attorney's fees should be **DENIED**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance

with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

　　　　DONE AND ENTERED this 6th day of March 2020.


　　　　　　　　　　/s/WILLIAM E. CASSADY
　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE